**ARROW TRANSPORTATION COMPANY et al., Appellants,**

v.

**SOUTHERN RAILWAY COMPANY et al., Appellees.**

No. 19928.

United States Court of Appeals
Fifth Circuit.

Sept. 7, 1962.

Certiorari Denied Oct. 15, 1962.

See 83 S.Ct. 121.

John Lovett, Benton, Ky., Morris Sirote, Birmingham, Ala., Joe Starnes, Jr., Guntersville, Ala., Charles J. McCarthy, Gen. Cnsl., T. V. A., Knoxville, Tenn., for appellants.

Joseph F. Johnston, Leigh M. Clark, Birmingham, Ala., John Donelan, William D. McLean, Gen. Sol., South RR. Co., Karl Grannan, Atty., Dept. of Agriculture, Washington, D. C., for appellees.

Before RIVES, JONES and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

The question for decision is whether a federal district court has jurisdiction to extend by injunction the statutory seven-month period of rate suspension in a proceeding still pending before the Interstate Commerce Comission.

The plaintiffs, appellants, Arrow Transportation Company et al., seek to enjoin the four defendants, appellee Railroad Companies, from applying to the rail transportation of grain certain railroad tariff schedules published by them and which are currently under investigation by the Interstate Commerce Commission in Docket No. I. & S. 7656, Grain in Multiple Car Shipments—River Crossings to the South. This appeal is from an order of the district court denying the plaintiffs' motion for a preliminary injunction solely on the ground that it had no jurisdiction of the subject matter.

The complaint based federal jurisdiction on diversity of citizenship, 28 U.S.C.A. § 1332; on the existence of a federal question, 28 U.S.C.A. § 1331; and on the Clayton Antitrust Act, 15 U.S.C.A. § 12 et seq., and 28 U.S.C.A. § 1337. The district court found the general jurisdictional averments as to diversity of citizenship and amount in controversy to be true. It further found that during 1961 the defendants published tariff schedules proposing to reduce substantially their rates and charges on the transportation of grain in multiple car shipments from certain Ohio and Mississippi River ports to numerous destinations in the Southeast. Its further findings of fact, conclusions of law and order are expressed so clearly and succinctly that they had best be quoted:

"6. On protest of interested parties, the Interstate Commerce Commission entered an order on August 7, 1961, finding that 'There is reason to believe that they [the tariffs] would, if permitted to become effective, result in rates and charges, rules, regulations or practices which would be unjust and unreasonable, in violation of the Interstate Commerce Act, and constitute unfair and destructive competitive practices in contravention of the National Transportation Policy—,' and suspending the effectiveness of the proposed tariffs for the maximum statutory period of 7 months pursuant to Section 15(7) of the Interstate Commerce Act, 49 U.S.C. 15(7). The Commission set the investigation hearings to begin in October 1961.

"7. It is admitted by the defendants that the Interstate Commerce Commission hearings scheduled for October 1961 were postponed to January 6, 1962 at Southern Railway Company's request because of its change of counsel and that the railroads agreed to extend the suspension period to July 7, 1962. It is also admitted by the defendants that counsel for the Southern Railway Company became ill during the hearings, that by reason thereof the hearings were interrupted, and that the railroads agreed to extend the suspension period to August 7, 1962. Such delay caused by the Southern Railway Company was compensated by further extension granted by the Southern.

"8. The tariff schedules published by the defendants which are currently under investigation by the Commission in I. & S. Docket 7656 will go into effect at 12:01 A.M. on August 7, 1962 unless the suspension period is extended by the defendants or unless the defendants are enjoined from putting them into effect by a court of competent jurisdiction.

"9. The hearings before the Commission in I. & S. Docket 7656 began on January 6, 1962 and are still in progress. It is agreed by the parties that the Commission will not be able to enter a final order before August 7, 1962.

"10. The plaintiffs are contending before the Commission that the proposed tariff schedules are unjust, unreasonable, discriminatory and de-

structive and will violate the Interstate Commerce Act and the National Transportation Policy.

"11. Defendants have declined to comply with plaintiffs' requests that they agree to extend the suspension period for another sixty days.

"12. There is grave danger that irreparable injury, loss or damage may be inflicted on plaintiffs if the proposed rates go into effect at 12:01 A.M. on August 7, 1962, for which plaintiffs will have no adequate remedy at law.

## "CONCLUSIONS OF LAW

"1. Section 15(7) of the Interstate Commerce Act grants exclusive authority to the Interstate Commerce Commission to suspend proposed railroad rates and limits that authority to a period of seven months from the proposed effective date of the rates unless further extended by consent of the carriers proposing the rates.

"2. Courts are without authority to enjoin or suspend the effectiveness of rates published by common carriers subject to the jurisdiction of the Interstate Commerce Commission before the entry of a final order by the Commission approving the rates. The only jurisdiction of a Court to enjoin or suspend the effectiveness of proposed common carrier rates arises after a final order of the Interstate Commerce Commission, and this is the authority vested in a specially constituted three-judge district court, upon complaint filed against the United States as a necessary defendant, to review the order of the Commission.

"WHEREFORE, it is hereby ORDERED:

"1. That the motion for a preliminary injunction and a temporary restraining order be and the same is hereby denied.

"2. That the motion of defendant Southern Railway Company that the complaint be dismissed and the same is hereby denied."

Section 6 of the Interstate Commerce Act (49 U.S.C.A. § 6) provides that rates and charges for transportation shall be initiated and published by the carrier and shall not be changed except after thirty days notice to the Commission unless the Commission, in its discretion and for good cause shown, allows changes upon less notice. The section most pertinent to the present appeal is Section 15, paragraph (7):

"*Commission to determine lawfulness of new rates; suspension; refunds.* Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, or charge, or any new individual or joint classification, or any new individual or joint regulation or practice affecting any rate, fare, or charge, the Commission shall have, and it is given, authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders without answer or other formal pleading by the interested carrier or carriers, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fare, charge, classification, regulation, or practice; and pending such hearing and the decision thereon the Commission, upon filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, fare, charge, classification, regulation, or practice, but not for a longer period than seven months beyond the time when it would otherwise go into effect; and after full hearing, whether completed before or after the rate, fare, charge, classification, regulation, or practice goes into effect, the Commission may make such order with reference thereto as would be proper in a proceeding initiated aft-

184

er it had become effective. If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, charge, classification, regulation, or practice shall go into effect at the end of such period; but in case of a proposed increased rate or charge for or in respect to the transportation of property, the Commission may by order require the interested carrier or carriers to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require the interested carrier or carriers to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such increased rates or charges as by its decision shall be found not justified. At any hearing involving a change in a rate, fare, charge, or classification, or in a rule, regulation, or practice, after September 18, 1940, the burden of proof shall be upon the carrier to show that the proposed changed rate, fare, charge, classification, rule, regulation, or practice is just and reasonable, and the Commission shall give to the hearing and decision of such questions preference over all other questions pending before it and decide the same as speedily as possible." 49 U.S.C.A. § 15, par. (7).

■ The Act seems to us to be a model of clarity. It is of course elementary that the power to prescribe rates to be charged in the future is a legislative function. Great Northern R. Co. v. Merchants Elevator Co., 1922, 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943; Terminal R. Ass'n v. United States, 1924, 266 U.S. 17, 30, 45 S.Ct. 5, 69 L.Ed. 150; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Railway Co., 1897, 167 U.S. 479, 499, 17 S.Ct. 896, 42 L.Ed. 243; 13 C.J.S. Carriers § 275b, pp. 623, 624. Though not so frequently declared

in the decisions, it would seem equally clear that the power to suspend or not to suspend rates involves a determination of what the rates shall be during the suspension period, which frequently extends. over months and years, and is itself a legislative function. See Board of Railroad Com'rs v. Great Northern Ry., 1930, 281 U.S. 412, 429, 430, 50 S.Ct. 391, 74 L.Ed. 936; 1 Davis, Administrative Law Treatise, § 7.08, p. 442; 9 Am.Jur. Carriers,. § 65, p. 472.

The Congress, in its wisdom, has permitted carriers to initiate their own schedule of rates subject to the authority of the Interstate Commerce Commission to determine the lawfulness of such rates. Pending the Commission's hearing for such purpose, it may suspend the operation of the rate schedule "but not for a. longer period than seven months beyond the time when it would otherwise go into effect." 49 U.S.C.A. § 15(7). Some irreparable injury appears unavoidable in the process of establishing new rates. If the new rates are ultimately determined to be just, reasonable, and lawful, the carriers and that portion of the public which would benefit from the change in rates have nonetheless suffered irreparable injury during the period of suspension. If the period of suspension has expired and the new rate schedule goes into effect, but is subsequently determined to be unlawful, then competing carriers and that portion of the public which would suffer because of the change in rates has been injured during the period when the rates were not suspended, and in many cases that injury is irreparable.

In case of increased rates, the Commission may require refunds. Experience has proved that such power to require refunds is itself an inadequate and unsatisfactory remedy, but even that remedy is unavailable in the case of reduced rates.

■ Prior to the Act carriers were at liberty to establish and maintain even unreasonably low rates provided they were not discriminatory. Keogh v. Chi-

cago & N. W. Ry. Co., 1922, 260 U.S. 156, 151, 43 S.Ct. 47, 67 L.Ed. 183. If cheap rates are monopolistic or in restraint of trade, and are the result of a combination or conspiracy among carriers,[1] the Government has adequate civil and criminal remedies under the Antitrust Act. Keogh v. Chicago & N. W. Ry. Co., supra. Section 16 of the Clayton Act, however, clearly stands in the way of private injunctive relief.

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided*, That nothing contained in sections 12, 13, 14–21, 22–27 of this title shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of chapters 1 and 8 of Title 49, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission." Title 15 U.S. C.A. § 26.

The Supreme Court has declared:

"Under that section jurisdiction of the Commission does not delimit the jurisdiction of the federal courts to restrain violations of the Sherman Anti-Trust Act. Compare United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290 [17 S. Ct. 540, 41 L.Ed. 1007]; United States v. Joint Traffic Ass'n, 171 U.S. 505 [19 S.Ct. 25, 43 L.Ed. 259]. It affects only the capacity of a private party to maintain a suit to restrain violations. See General Investment Co. v. New York Central R. Co., 271 U.S. 228 [46 S.Ct. 496, 70 L.Ed. 920]. Its obvious purpose is to preclude any interference by injunction with any business or transactions of interstate carriers of sufficient public significance and importance to be within the jurisdiction of the Commission, except when the suit is brought by the Government itself. * * * "

Central Transfer Co. v. Terminal R.R. Ass'n, 1933, 288 U.S. 469, 474, 475, 53 S.Ct. 444, 77 L.Ed. 899.

Section 8 of the Interstate Commerce Act appears to provide that the carriers would be liable in damages to the persons injured if the cheaper rates are ultimately declared unlawful:

"In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the

---

1. Southern Railway Company has filed an affidavit to the effect that, "There was absolutely no concert of action between Southern and any other railroad in connection with the determination and publication of these rates which subsequently were suspended by the Interstate Commerce Commission and are now being investigated in ICC Docket I. & S. 7656."

costs in the case." Title 49 U.S.C.A. § 8.

◼ All of the provisions of the Interstate Commerce Act are required to be administered and enforced with a view to carrying out the National Transportation Policy declared in the Act of September 18, 1940, c. 722, Title I, § 1, 54 Stat. 899, 49 U.S.C.A. note preceding § 1:

"It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to co-operate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions; —all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense. All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy."

An unreasonably low rate found to be in violation of the National Transportation Policy would give rise to an action for damages under 49 U.S.C.A. § 8. That such a finding may ultimately be reached after full hearing furnishes no authority to the Courts to extend the statutory seven-month period of rate suspension in the face of the clear mandate of the statute that, "if the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, charge, classification, regulation, or practice shall go into effect at the end of such period. * * *" [49 U.S.C.A. § 15(7).]

◼ Essentially the Court is asked to declare as to the present case that the seven-month period of suspension provided in the statute is inadequate. If that can be done in this case, there is practically no end to the number of instances in which the courts will be called on to set aside the mandate of the statute. Congress, in its wisdom, has fixed seven months as the maximum period of suspension. It seems clear to us that if the courts extend that period, they are in effect amending the statute and that is a matter beyond their power.

We have given careful consideration to the excellent briefs of counsel on both sides and to those filed by amici curiae. A further discussion of many pertinent authorities would be in order if time were not of the essence. Since, however, this is a case where justice delayed would be justice denied, and we have no doubt of the soundness of our decision, we shall forego any further discussion. Since Southern Railway Company has not appealed, we do not pass on that part of the judgment denying its motion to dismiss. See 7 Moore's Federal Practice, 2nd ed., Sec. 72.05.

To afford the appellants a reasonable time to seek a writ of certiorari from the Supreme Court, it is directed that the mandate of affirmance issue twenty-one days from the date of this decision. See Fifth Circuit Rule 32, 28 U.S.C.A. If during that period a petition for certiorari has been filed, prompt consideration will be given to any request for a further stay of the mandate. See 28 U.S.C.A. § 2101(f); Supreme Court Rule 18, 28 U.S.C.A.

The judgment of the district court denying the motion for a preliminary injunction is affirmed.

Affirmed.