No. 13557

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE ex rel., CHEMICAL TRANSPORT et al.,

Relator and Appellant,

-vs-

GORDON E. BOLLINGER et al.,

Respondent and Respondent.

---

Appeal from:   District Court of the First Judicial District,
               Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

    For Appellant:

        Scribner and Huss, Helena, Montana
        A. W. Scribner argued, Helena, Montana

    For Respondent:

        Geoffrey L. Brazier argued, Helena, Montana
        Charles H. Dickman, Helena, Montana
        Robert Smith argued, Helena, Montana

---

                              Submitted:   April 20, 1977

                                Decided:  AUG 2 2 1977

Filed: AUG 2 2 1977

*Thomas J. Kearney*
                                              Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Relator appeals from the order and final judgment of the district court, Lewis and Clark County. The district court order granted the Consumer Counsel's motion to dismiss relator's application for writ of mandate. Judgment was entered in favor of the Consumer Counsel, intervenor respondent here.

Relator is a motor vehicle common carrier operating in interstate and intrastate commerce. Its intrastate operations are conducted under certificates issued by the Montana Public Service Commission and under the provisions of Title 8, Chapter 1, Revised Codes of Montana.

On June 26, 1975, relator filed with the Public Service Commission its Supplement No. 6 to Commodity Tariff No. 2(A), specifying proposed increases in intrastate motor carrier rates on acid chemicals and other commodities, to be effective August 1, 1975. On or about the time of filing its Supplement No. 6, relator also filed its sworn statements and exhibits supporting the proposed changes and revisions.

On July 22, 1975, the Public Service Commission entered a suspension order, pursuant to section 8-104.5, R.C.M.1947, suspending relator's proposed tariff schedule, pending a hearing as to the reasonableness of the proposed increased rates. The Public Service Commission set the matter to be heard on November 18, 1975.

In its pleadings to the Public Service Commission, at the administrative level, the Consumer Counsel requested a public hearing. Prior to the date of the hearing, the Consumer Counsel served written interrogatories upon relator demanding the same be answered before the hearing. Relator objected to the interro-

gatories. The Public Service Commission notified the parties that oral argument upon the objections would be heard at the time set for hearing on the merits.

On the date set for hearing, the Public Service Commission heard oral arguments on the objections to interrogatories, but declined to hear the case on its merits and postponed the matter to a date and time to be set by the commission. At that time 119 days had elapsed since the date of the order suspending relator's new tariff schedules. During oral argument the Public Service Commission Chairman asked relator's counsel whether relator was willing to waive the 180 day period of suspension. Counsel replied relator was unwilling to do so.

The matter was never rescheduled for hearing. On December 3, 1975 (15 days after the prior hearing and 134 days after the suspension order) the Public Service Commission overruled relator's general objections to the interrogatories. The Public Service Commission did not notify the parties of this action until January 5, 1976 (33 days after the action was taken and 167 days after the suspension order). The ruling purported to give relator until January 19, 1976, (181 days after the suspension order) to answer or object to the Consumer Counsel's interrogatories. By letter dated January 16, 1976, relator advised the Public Service Commission:

"Please be advised that the 180 days period which is prescribed in section 8-104.5, R.C.M. 1947, expires on January 18, 1976. No hearing having been held nor order issued within such period, pursuant to the aforementioned section, the tariff revisions proposed in this docket are deemed approved and effective as filed.

"For this reason we consider the interrogatories submitted in connection with a hearing in this proceeding as moot, and do not intend to respond to them."

Relator thereafter tendered to the Public Service Commission for filing its Supplement No. 7, notifying customers of the increased rates. By letter dated January 21, 1976, the Public Service Commission rejected Supplement No. 7 and ordered relator:

> "* * * not to assess or collect the full amount of the various chemical rate increases requested * * * until such time as the Montana Public Service Commission makes a final determination as to the validity and lawfulness of such increase in rates. * * *

> "* * * the Commission feels the interrogatory question is still at issue."

On January 28, 1976, relator filed an application for writ of mandate in the district court. Upon issuance of the writ of mandate or other appropriate writ, relator sought the district court's directive (1) instructing the Public Service Commission to accept for filing relator's Supplement No. 7 to its Commodity Tariff No. 2(A), thus implementing the rate increases provided for in Supplement No. 6; (2) that judgment be entered in favor of relator for reasonable attorney's fees and costs; and (3) that respondents be ordered to appear and show cause why the relief sought should not be granted. The district court issued an order to show cause compelling respondents to appear before the court on February 11, 1976.

On February 6, 1976, the Consumer Counsel filed a motion to intervene and a motion to dismiss relator's petition on the ground it failed to state a claim upon which relief could be granted. The district court granted Consumer Counsel's motion to dismiss and judgment was entered in favor of Montana Consumer Counsel, the intervenor respondent. The judgment of the district court held:

"* * * that insofar as the noted proviso of Section 8-104.5 works or can work to shut out a hearing requested by the consumer counsel it conflicts with our constitutional and legal provisions having to do with the counsel."

The parties to this action list several issues for review. However, we find the central and controlling issue is whether the Public Service Commission is justified in refusing to accept for filing relator's proposed tariff schedule on the grounds section 8-104.5 conflicts with the Montana Constitution, the Montana Consumer Counsel Act, the Montana Administrative Procedure Act and other pertinent statutory provisions affecting the Montana Consumer Counsel.

Sections 8-104.1, 8-104.2 and 8-104.5, R.C.M. 1947, set forth the procedures for revising motor vehicle common carrier rate schedules:

"8-104.1. Board's duty to fix rates. It shall be the duty of the board to fix, alter, regulate and determine just, fair, reasonable, nondiscriminatory, and sufficient rates, fares, charges, classifications, and rules of service for the operation of class A and B motor carriers within this state. The board also may fix and determine reasonable maximum or minimum rates for the operations of any class C motor carrier when the same are required for the best interests of public transportation."(Emphasis added.)

"8-104.2. Rate schedules, filing with board. Every class A or B motor carrier holding a certificate must maintain on file with the board a full and complete schedule of its rates, fares, charges, classifications, rules of service, and any and all tariff provisions relating to such rates, fares, charges, classifications, or rules. Every schedule on file with and approved by the board on the effective date of this act shall remain in full force and effect until changed or modified by the board or by the carrier with the approval of the board.

"No change, modification, alteration, increase, or decrease in any rate, fare, charge, classification, or rule of service shall be made by any motor carrier without first obtaining the approval of the board. The board shall prescribe rules and/or regulations providing for the form and style of all schedules and tariffs and for the procedures to be followed in filing or publishing any changes or modifications of the same." (Emphasis added.)

"8-104.5. Changes, revisions of rate schedules, how made. No motor carrier shall change or revise any rate, fare, charge, classification, or rule of service contained in its schedule without first obtaining approval therefor from the board. Such changes or revisions shall be made by filing with the board the tariff sheet or sheets containing such changes or revisions, plainly stating the change or changes, or revision or revisions, to be made; provided further, that the public shall be provided with such notice of the proposed changes or revisions as the board shall, by rule, require. The tariff sheet or sheets containing such changes or revisions shall be deemed approved and effective thirty (30) days after the same are filed unless the proposed revisions or changes are suspended or disallowed by the board prior to the expiration of the thirty (30) day period; provided however, that the board may, for good cause, allow any change or revision to become effective on less than thirty (30) days after the filing thereof. Upon filing such changes or revisions, all tariff sheet or sheets, when suspended by the board, must be supported by such prepared testimony and exhibits from the motor carrier as will support such changes or revisions. The prepared testimony and exhibits must be filed with the commission thirty (30) days after the effective date of such suspension. Such testimony and exhibits may be supplemented prior to, or at the time of hearing, and supplemental exhibits may be filed after the close of the hearing at the direction or with permission of the commission.

"Upon its own initiative, or upon the complaint of any interested party filed with the board within twenty (20) days after the date upon which a change or revision of any rate, fare, charge or classification is filed with the board, the board may suspend the operation of such rate, fare, charge, or classification for a period not to exceed one hundred eighty (180) days, provided however that the order directing such suspension must be issued by the board not less than two (2) business days prior to the proposed effective date; and provided further, that the motor carrier or carriers filing such rate, fare, charge, or classification shall be given prompt notice by the complaining party mailing a copy of the complaint concerning such proposed change or revision to the carrier or publishing agent, and such carrier or carriers also shall be given an opportunity to reply to any such complaint. If the proposed change or revision is in a tariff issued by a tariff publishing bureau for a motor carrier or carriers, notice to such bureau of any complaint will constitute notice to the participating carriers in such tariff. When the suspension of any proposed change or revision in a tariff is ordered by the board, it shall also order a public hearing to consider the reasonableness of the proposed change or revision; due notice shall be given for such hearing to all known interested or affected persons and the same shall be allowed to appear and present evidence. After considering the evidence presented at such hearing, the board shall issue an order approving, denying, or modifying the

- 6 -

proposed change or revision; provided however, that
unless such hearing is held and such order is issued
within one hundred eighty (180) days from the date upon
which the suspension was ordered, the proposed change
or revision shall be deemed approved and effective as
filed." (Emphasis added.)

Relator contends the plain, clear and unambiguous language of section 8-104.5, specifies tariff revisions become effective 30 days after they are filed, unless within that period the Public Service Commission issues a suspension order, which may cover a period of no longer than 180 days. The Public Service Commission is empowered to approve, deny or modify the submitted tariff schedules, within the suspension period, after notice and hearing. Unless a hearing is held and an order issued by the Public Service Commission, the tariff revisions are deemed approved and effective as filed. Since the Public Service Commission did not hold a hearing in the instant case, within 180 days from the date the suspension was ordered, relator concludes a writ of mandate should be issued compelling the Public Service Commission to accept for filing, as approved and effective, relator's tariff schedule.

Respondents argue "changing legal relationships in this case" act to amend or modify the 180 day suspension rule in the Motor Carrier Act when the 180 day rule deprives the Consumer Counsel of its right to a hearing. Respondents specifically cite: (1) Art. II, Section 8, 1972 Montana Constitution, which insures the right of public participation in the operation of state agencies prior to final decision; (2) Art. XIII, Section 2, 1972 Montana Constitution, which establishes the office of Consumer Counsel for the representation of consumer interests before the Public Service Commission, and (3) the Montana Administrative Procedure Act as the catalysts precipitating the changing roles in the field of utility and transportation rate regulation.

We believe respondents have incorrectly characterized the issue in this case as a conflict between statutory manda tes and constitutional guarantees. The present action arose only because the Public Service Commission failed to hold a procedural hearing within the 180 day statutory limitation. The sole obstacle which confronted the Public Service Commission was a determination of whether or not relator was compelled to answer written interrogatories submitted by the Consumer Counsel. We fail to see how such a deterent could be the basis for the Public Service Commission failing to timely schedule the requested procedural hearing.

The Montana legislature fixed 180 days as the maximum period of suspension. It seems clear to this Court that our extension of that period would in effect amend the statute and that is a matter beyond this Court's power. Art. III, Section 1, 1972 Montana Constitution; Arrow Transportation Co. v. Southern Railway Co., 308 F.2d 181 (1962), cert. granted 371 U.S. 859, 372 U.S. 658, 83 S.Ct. 984, 10 L ed 2d 52 (1963). We likewise fail to find any constitutional basis for overturning the statute. Even if this Court was empowered to amend the 180 day period of suspension, the Consumer Counsel would have no assurance a timely hearing would be scheduled by the Public Service Commission. Without any statutory period of maximum suspension, motor carriers could incur substantial time lags in obtaining rate increases since the Public Service Commission could postpone and reschedule hearings without restriction. If the 180 day period of suspension is inadequate the proper recourse is for respondents to seek legislative amendment of the statute, not judicial interference.

We note the resultant effect of the 180 day period of suspension is not to deprive the Consumer Counsel, or any other interested member of the public, a vehicle for challenging the reasonableness of a motor carrier's proposed intrastate rate increase. Section 8-104.4, R.C.M. 1947, in part specifically provides:

"8-104.4. * * *

"The board may, upon its own initiative or upon the complaint of any interested party, investigate any rate, fare, charge, classification, or rule of service contained in the schedule of any motor carrier; if the board shall find, after such investigation, that any such rate, fare, charge, classification, or rule of service is unfair, unjust, unreasonable, or discriminatory, it shall disallow the same and fix a rate, fare, charge, classification, or rule of service which shall be fair, just, reasonable , and nondiscriminatory, and it shall order the affected motor carrier or carriers to conform to such modified schedule; provided, however, that each motor carrier affected by any complaint or investigation shall first be given notice of the same and an opportunity to be heard before the board."

In this opinion this Court refrains from considering either the propriety or reasonableness of relator's proposed rate increases. We hold only that the Public Service Commission, in refusing to approve and give effect to relator's proposed tariff schedules, has failed to perform a clear legal duty arising under the Montana Motor Carrier Act.

The order and judgment of the district court are reversed and the cause is remanded for issuance of the writ of mandate sought by relator, consistent with this opinion.

_Gene B Daly_
/Justice

- 9 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

· · · · · · · · · · · · · ·

Mr. Justice Daniel J. Shea took no part in this Opinion.

· · · · · · · · · · · · · · · ·